Your Honor, the first case on the docket is 2-18-0048, the people of the state of Illinois. The plaintiff's attorney will be Gene, Gene, Gene McCollum, defendant's athlete. Arguing on behalf of the plaintiff's attorney, Mr. Edward Rayla Pesenica. Arguing on behalf of the defendant's athlete, Mr. Brian G. Lesser. Mr. Pesenica. Good morning, Your Honors. Good morning, Counsel. May it please the Court, my name is Randy Pesenica. I'm here today on behalf of the people of the state of Illinois. And we are here today on appeal from the trial court's decision to grant a motion to suppress evidence that was seized pursuant to a warrant that the trial court in effect quashed. And what I'd like to do to the extent that time and Your Honors permit would be to discuss probable cause. And because that is a threshold issue in this case, and to the extent I can, then reach the exigent circumstance argument and the independent source argument, which are alternative grounds for arguing that the exclusionary rules should not have been applied in this case. Isn't the central issue in this case the justification for the initial entry? It is, Your Honor. So why don't you get to that. But what justified the initial entry? All right. Well, we have, it's based on probable cause is our argument. And we have an anonymous tip. Two months old. Time suffers tip that's approximately six weeks old, with less than two months, that there are a bunch of people dealing drugs out of this particular residence.  So the police officers, six weeks later, approach this home and are greeted by a pregnant girl and the smell of marijuana wafting from the residence. So it would be our position that that was probable cause to justify the entry. And in particular with relation to the motion to suppress that was argued here and the hearing on that, our position is that the trial court cherry-picked one fact from that evidence and hung her hat for saying there was no probable cause on that one known fact without reaching many other issues of evidence that were presented at the hearing. And that fact being that it was highly unlikely that the officers could smell marijuana from their vantage point at the front door that was located in a closed container in the second bedroom closet, given that it was such a small amount. Mr. Seneca, what is our standard in review here? You review factual determinations for manifest weight and then the propriety of the granted motion to suppress de novo is the standard review. And we are arguing that the factual findings are against the manifest weight because the findings are unreasonable, arbitrary, and not based on the totality of the evidence. What's unreasonable and arbitrary about the trial courts not believing the police officers when they said they could smell the cannabis, a strong odor of cannabis, from the outside before the entry occurs? What is unreasonable about that? I mean, well, it's in a closed container in the upstairs bedroom and the officers allege, the officer alleges, that it was a strong odor as soon as the door was open. Well, I'm sorry to interrupt you. So what's arbitrary or unreasonable about that finding? Number one, the trial court did not say, I didn't believe the officers. So there was not, trial courts know how to make credibility changes. You said it was highly unlikely. Highly unlikely. And that pronouncement ignores reasonable inferences from this record that there was marijuana located in other portions of this residence. That being, number one, in the backpack that the defendant presented to Deputy Woods when she said, I believe this is what you're smelling. That particular backpack contained within it containers that had marijuana residue, what's known as marijuana shake, in them. But that's when they came down the steps with the backpack, correct? She came from the upstairs. That is correct, Your Honor, but we also, on the record, the defendant admits that she knew that the police officers were at the door while they were still outside. And then her daughter testified that when she answered the door and saw that it was the police officers, she stepped outside and shut the door behind her. So we don't know what happened in that house when this occurred. We don't know how much marijuana, if any, was on that first floor of that home. That is speculation. You have to judge. We look at the facts presented to the trial court, correct? That is correct. Okay. And, you know, marijuana, unlike guns, is perishable, consumable. And the only marijuana in the home is found upstairs in closed containers. That's what the trial court says, but the record doesn't bear that out. Like I was just saying, where on the first floor was there marijuana residue? In the backpack. That backpack was recovered on the first floor. But that backpack that she came, I'm sorry, she came down the steps, I think, was it the mother or somebody came down the steps with the backpack? It's the mother. Yes. At that point, they were already in the house. One officer was. Deputy Woods was in there to do a protective sweep of the residence to secure it in anticipation of the warrant that was forthcoming. At what point did they call? Was it Dratz? Dratz. At what point did he call for the warrant? He called for the warrant. He didn't enter the house before. Right. Shortly after he smelled the marijuana, he said, I have probable cause, I'm going to get a warrant. And that's when Dratz and Woods kind of switched positions, and Woods approached the door, and he also said he could smell the marijuana wafting from the residence. Our argument on this, really, Your Honors, is that trial courts know how to make credibility determinations. If she believed that these officers were lying, she should have said that. She should not have just cherry-picked one piece of evidence from this record and said that it's highly unlikely when there's other inferences. She denied a motion to reconsider. That's true, Your Honor. So she reconfirmed whatever findings she made, correct? That's correct. And you're suggesting that is not a reaffirmation of her credibility and determination that she did not believe the officers could smell marijuana from the outside? She does mention that, and it's our position that's a bit of revisionist history on the part of the trial court because she did not make a credibility determination. Highly unlikely to have smelled it is not a credibility determination. We have no quibble with that. We agree that it's unlikely that they could have smelled marijuana in a closed container in a closet on the second floor. But the inference from this record supports more than that. And I'd also draw Your Honor's attention to the fact that both the defendant and her daughter, they both recognized that the police were smelling something, and they tried to attribute it to something other than marijuana. The daughter says it's cat urine, and Officer Field says, I know cat urine. This is not cat urine. It's marijuana. The mother says, I know what you must be smelling. It's this backpack. So that's a recognition on the part of both the defendant and her daughter that there was an odor in this house. There was. And what's important about the backpack, at the hearing, the mother then denies that the backpack even existed. Why isn't there a credibility determination there? How can you cherry-pick one fact, render a credibility determination on that one fact, and hang your whole determination that there's no probable cause on that fact? It's not supported by the record. It just isn't. Let me ask you a question. First of all, this case is out of McHenry County, correct? That's correct. What are you doing arguing? It's a little unusual circumstance. The case, we entered an appearance. It was taken from us by McHenry. They filed the briefs and then gave it back to us. All right. I was just curious. Mr. Jacobson wrote the brief, and he's now a clerk in this court with Justice Hutchinson, correct? I don't know. And you're with SAP now rather than DuPage. That's right. The pieces have all kind of turned around. Wait, I'm with SAP? Yes. Oh, okay. Did I see Lisa sitting here? I'm all confused. All right. Let's get back to the case of him. You also raised, or somebody raised in the briefs, the independent source doctrine. That's right. Talk about that. Let's talk about that. Well, we raised that under Segura, and basically long and short of that is if it's an exception to the exclusion rule whereby fruits of a search pursuant to a warrant will not be excluded if the source of that warrant is independent of a previous constitutional violation. And I recognize, as Justice Burkett pointed out, that if this court agrees that there's no probable cause, then we're out of the box there. Our argument is dependent on the probable cause. An element of the probable cause in the warrant is the odor that was observed, because without that, this warrant is stale, and it doesn't have details. It lacks the details. There's no recent transactions. There's no details at all with regard to transactions, whether they occurred in the home or not. They don't even say in the warrant that transactions occur at the home. These people could be having their marijuana stored in some remote location, which is not unusual, conduct their transactions elsewhere, and just live in the home. So we have no details whatsoever. The whole case falls on whether or not we credit the trial court's determination that, quote, unquote, it's highly unlikely that he could smell that, which you say that's not a credibility determination. No, I say credit that, but that's not the entire record. What's the probable cause, then, without the odor of the cannabis from the outside? No, it is odor on the cannabis, but not simply based on the fact that where most of it was found. There was other cannabis found in this residence. I'm recognizing that, but the warrant challenges not necessarily the warrant itself. The motion challenges the initial entry. That's right. Without the initial entry, the State loses, correct? That's right. And what I'm arguing is there was probable cause for the initial entry based on the anonymous tip and the odor of cannabis as testified to by the affiant, Officer Drass. And he also releases that Fields smelled it in the complaints for the search warrant that day. And the search warrant does not list the cannabis that was found upstairs prior to getting the warrant, correct? I mean, that jar of marijuana upstairs is not listed as probable cause. That's right. The only thing in the warrant is the odor and the tip, and the tip that's corroborated insofar as a young pregnant lady came to the door along with a wafting odor of marijuana. So it's not a completely – it's a partially corroborated tip at minimum. And so, like I said, our argument is based on Your Honors agreeing that the circuit court's decision that there was no probable cause is against the manifest way to the evidence. And like I've been trying to put forth, her decision rests on one tiny fact she cherry-picked from the evidence. Well, the officer said we have probable cause for a warrant. That's right. Within moments of the door being opened. That's right. That's exactly right. And another thing that supports the fact that marijuana was moved around in this home before the officers executed their search, the officers say that they hear people moving around. And the defendant says, no, no, no, that's the cats. And at that point, they do a protective sweep. And during that protective sweep, another individual besides Maddie and Janine, the defendant, is found in the home. It's another daughter. Okay, hold on a minute. There's some people here in the audience who are gesturing towards us as the panel. No, you were gesturing towards us. Yeah, hey, I'm the one. Okay. All of this is highly inappropriate. Continue. Thank you, Your Honor. So that is further indicia that the marijuana was moved in the house. That indicia is the fact that the door was closed for a period of time, according to one of the daughters. And the mother recognized that there was an odor in the house, and she presented the police with this backpack. So I would agree, and I think the defense would probably agree, that if the trial court believed the police officer's testimony that he could smell the odor of cannabis from the outside, this case is the motion to suppress is denied. That's the bottom line here, because that is the gateway to the search warrant. I completely agree, Your Honor, and this is what makes it so untenable in this situation. What if there were 43 pounds of marijuana in that closet? Ms. Seneca, please. It doesn't matter whether there's 5 grams or 5 pounds. The issue is whether or not, in this case, given these facts, is the trial court's determination that she did not believe, she did not credit the officer's testimony that he could smell the marijuana from outside the residence. The case rises or falls on that. And why should we reverse the trial court's finding that it's, quote-unquote, highly unlikely or not credible testimony that he could smell it from the outside? Why should we not credit that finding? Well, as I was saying previously, I don't believe it is a credibility finding. I think it's just a fact, and it doesn't account for the fact that there was marijuana in other places of this residence. But what I was trying to get to, Your Honor, the hypothetical, if Your Honors would permit me, had 43 pounds of marijuana been found in this hospital instead of 43 grams, then we're not here, because then the search warrant would rise and fall based on how much marijuana was actually found in the residence. That can't be the rule. What? I didn't get that. Repeat it. As Justice Burkett was saying, the circuit court hung its hat on the fact that there were 43 grams in the closet, and therefore it's highly unlikely that they could smell it. But had there been 43 pounds, then the motion to suppress likely would have been denied. And how can the denial or granting of a motion to suppress be contingent upon how much marijuana is actually found? Based upon the smell. Right. So if the court said there was 43 pounds of marijuana found on the first floor as opposed to upstairs under a pile of clothes in a jar, wouldn't that make more sense? Well, I'm just saying that highlights the unreasonableness of the circuit court's decision here. Or what if the 43 grams were in a drawer right by the front door? Then it's not so unlikely. But it's still the order of marijuana that's getting you in there. So the weight cannot be just a dispositive factor, and it would be under this trial court's ruling. Well, I know you've put a lot of speculation here. The issue is what are the facts in this case? Right. Obviously, the larger the amount of marijuana, the stronger the likelihood that there's going to be an odor. This is a very small amount, relatively speaking, in a closed container upstairs. That's, you know, I mean, the police officers and the defense argued they didn't go there. They went there with the intent to go in. That was their argument. Correct? That is correct, Your Honor. And I heard my time is up. If I could just go ahead and go on. So she's making her decision, the judge, actually, on a fact that's not known at the time the police officers enter. And it's not known until later, right? No, that's not true. Well, in a sense, she is, because she's saying, I'm making this decision based on the fact that they recovered the cannabis here, the fact that it's sealed here. None of that is known at the time they make their entry. That's exactly right, Your Honor. I agree. Like I said, it seems to me to be revisionist history to an extent. So for those reasons, the people would ask that Your Honor reverse the decision of the circuit court and remain for the proceedings. Thank you. Go ahead. Your Honor, may it please the court. My name is Brian Lesser. I'm with the Office of the State Appellate Defender. I'm representing Ms. Janine McCullum, who is here today with her family. In this case- Mr. Lesser, did you instruct the family not to make gestures like- I did not, Your Honor. My apologies on behalf of my client and her family. In the future, if you have family members attend, please advise them to respect the dignity of the court, okay? Yes, Your Honor. Thank you. So in this case, several police officers entered and searched the McCullum house without a warrant, without consent, without an exigent circumstance, and without probable cause. And as the trial court properly found, the evidence that was found as a result of their illegal entry should be suppressed. Isn't the court, though, the trial court, when it rules on this motion, isn't it limited to reviewing the information that was before the judge who issued the warrant? Under the type of motion that was filed. This wasn't a Frank. This wasn't a Frank hearing, right? Well, this was a motion to both suppress the evidence and to quash the warrant. And the interesting nuance in the case is that the warrant was issued after the search happened. So it's not just that the warrant needs to be quashed. Because if the warrant itself is supported by probable cause, that can cure the illegal entry. But the illegal entry still happened. So the primary determination is whether or not there was an illegal entry in the first place. And then the latter determination is whether or not the tank is purged of that illegal by the warrant. But the warrant didn't list the entry as probable cause, correct? Correct. So in order for the independent source doctrine to even be triggered, the warrant has to be not affected by the illegality. Right. Both the decision to seek the warrant and the information contained within the warrant. So what was the basis for the warrant? So there were really only two pieces of evidence included in the warrant affidavit. Number one, the tip, which the courts recognized was stale, anonymous, uncredible, without any basis for the knowledge. Well, there was corroboration. The one individual was pregnant. Correct? Correct. So that was confirmed. That detail was confirmed. Well, that she knew that this woman was pregnant within the house. Right. So that was a, I guess, confirmed. It doesn't confirm any illegality. No, but is it contrary to what you just said? It is a detail that was confirmed. Yes, Your Honor. Okay. And the other factor, the other piece of evidence that was included was the scent. It's the defense's position that actually the decision to seek the warrant was influenced by illegal entry, that Officer Dress began the telephone conversation to potentially request a warrant, but the burden here is on the state to prove the timeline of events. All we know is around 630 they arrived at the house, and a little after 8, the search warrant was granted. Now, within this period of events, we know that Officer Woods enters the house, and Officer Dress testified that while he was on the phone, he couldn't tell where his other officers were, and that's because Officer Woods had already entered the house. As Janine McClellan testified, the officers had already gone up into her bedroom, seen the cannabis in her closet, laughed, and then they said, we're going to be in the process of getting a search warrant. We need you to get your daughters and wait outside. That is the chain of events that happened here. And so even though they didn't include the fact that they had already entered in the warrant application, the decision was at least subconsciously influenced by the illegal entry that had already occurred. You talked about the independent source doctrine. Did the court make any mention of independent source doctrine factors in her ruling? And do they have to? What do you mean by factors? The basis for the finding of the independent source doctrine. Well, the court did not go into detail, I guess, in application of SIGURA. But to be fair, neither did the state. They merely just said the court should apply SIGURA, and therefore this court should not suppress the evidence. But SIGURA is not fully applicable to this case. It's really trying to push a square peg into a round hole. That's for several reasons. Importantly, SIGURA is really two pools of evidence. The evidence that was found during the illegal entry, and the evidence that was found the next day during the execution of the search warrant. That all the evidence that was found during the initial illegal entry was suppressed in SIGURA. That's not even an issue. That that's only the evidence that was found the next day during the execution of the search warrant. That's not such a factual distinguishment. Well, the illegal entry, the State is saying that didn't influence the officers in their decision to get the warrant. So that would be the first factor would be met. You're saying, well, that's not true because the timing is not correct. So even putting aside what they discovered on the initial entry, would it be perhaps in the alternative fair for us to suppress what was found in the initial entry and uphold what was found pursuant to the warrant? And why not? As far as I can tell, based on the record, Your Honor, all of the contraband at issue was found during the initial illegal entry. So I don't believe there is any evidence that was found during the latter execution of the search warrant, although it wasn't seized until later. So I don't think that's applicable now. The motion suppressed did allege that the police officers could not smell the cannabis from the outside of the residence, correct? Yes. And the State had argued that that was inconsistent with other allegations in the motion. It seems consistent based on the evidence presented. That was the position taken by the defense throughout, that the initial entry was not justified because the officers could not smell cannabis from the outside. Yes, that is the defense's position, and that is what the trial court found and agreed with, that based on the credibility of the witnesses before it, it made a factual determination based on the evidence that the officers did not smell the cannabis from outside the house, and therefore they lack probable cause. Would you agree that had she found that that testimony regarding the smell was credible, the State prevails, correct? That is not the defense's position, no, Your Honor. Why not? It is the defense's position for several reasons. Number one, that the warrant was influenced by the illegal entry, and therefore the independent search doctrine is inapplicable. But if the officers could smell cannabis from the inside... From the outside. Or from the outside, they could have entered to remove people from the home, correct? No, Your Honor, that is not the defense's position. Isn't that the law, though? I mean, can't officers ask people to exit the residence while they're obtaining a warrant? That's black-letter law, isn't it? If they have probable cause to search, they can ask people to remove people from a residence and wait for a search warrant, correct? Well, first off, that's not what happened in this case, Your Honor. He's asking you hypothetically. He's going down with the ship. Well, it is the defense's position that even if the officers did smell the marijuana, that it's not sufficient probable cause to grant an issuance of a search warrant. No, Your Honor, they can ask people to exit the residence while they get a search warrant because they had other information. It's not just what they observed at the door. They did have a tip that there were cannabis being sold, correct? Yes, Your Honor. Okay. So the bottom line is they could have asked the people inside the residence to exit the residence or watch them while they're waiting for a search warrant. And not have gone in. And not have gone in. Right, right. Well, that would be a different circumstance, yes, Your Honor. In this case, in the Segura case that the State has cited, the officers had probable cause to arrest when they entered. And so in doing so, and the reason why Segura is specifically conditioned on having probable cause to arrest when they enter, although the entry is illegal, they're committing both an illegal search of the residence and an illegal seizure of the residence and the persons within it in the process of doing that. And the illegal search can be cured by a latter issuance of a search warrant, but that seizure cannot be cured by the latter issuance of a search warrant, which is exactly why Segura requires both of those types of probable cause. And the police, I think, unconceivably have, did not have probable cause to arrest either Janine or Madison when they entered. So that's an important distinction that, yet again, means that the independent search doctrine cannot apply to this case, that the evidence still should be suppressed. But the officer didn't use anything from the initial search in order to obtain the search warrant, correct? Within his affidavit, no, he did not. So whether the decision was influenced, it was influenced by the Woods' illegal entry. If your position is that the affidavit for the search warrant provides false information, which is, I think, your position, right? That is the trial court's determination? No. Your position is that the information that they could smell the pot from the front door, that that's false, right? Yes, Your Honor. Then shouldn't there have been a Franks hearing?  I have reason to believe that the officers were lying before the motion to suppress hearing. The reasons for believing the officers did not smoke the marijuana outside came about during the motion to suppress hearing. And so a Franks hearing and a motion to suppress really accomplish the same purpose, and that's determining whether or not the officers had probable cause before they entered. And the court properly determined here that they did not. Further, I'd like to stress that the State did not raise the Franks hearing in their appellate argument. They did not raise it during their brief. So that argument really should be waived. I'd just like to stress the whole purpose of the Fourth Amendment and the reason why we're supposed to be secure in our houses from unreasonable searches and seizures is to prevent situations like this. The whole point of the exclusionary rule is to prevent police misconduct, to not allow them to just enter our houses because they think it smells funny in the hope that later on they can get a search warrant. That is exactly the kind of police misconduct we're trying to deter with the exclusionary rule, and that's exactly what happened in this case. So briefly, I'd like to just discuss the State's other argument, that they had an exigent circumstance to justify their entry. Officer Woods claimed that he thought the destruction of narcotics was at issue in this case. I cited several factors in my brief for the Court to consider when determining whether or not an exigent circumstance was present. Other factors would be more important. Let's talk about the—go back to the odor. There was an odor emanating from the residence, right, according to the testimony? There were odors emanating from all things at all times. Please, let's stick to this case. There was evidence that there was cat urine smell coming from the residence. That was the testimony. And would it be unreasonable for an officer to confuse cat urine with marijuana smell? I actually think it's pretty reasonable. I think that they both smelled fairly pungent. I don't think it's unreasonable for an officer to have those things confused, no. And the officer may have just been mistaken and mistakenly believed that what he was smelling was marijuana based upon the information that had been provided by the tip. Exactly, Your Honor. I believe that the evidence supports that determination and the trial court's finding, and that's exactly why the State has not met their burden of proving that the trial court's finding was unreasonable, arbitrary, and against the manifest way of the evidence, because the evidence, in fact, supported the trial court's determination. Well, as the State pointed out, the trial court did not exactly say the officer was lying. She just said it's unlikely. She was being judicious in her credibility determination, yes, Your Honor. Mr. Lesser, you talked about destroying the drugs. Was there some particular reason, or does there have to be some particular reason, to believe that drugs were being destroyed? And was there anything giving indication in this case? They are required by Illinois law to give a particular reason to believe that narcotics would be jeopardized or destroyed before they entered. An officer was testified that his reason was that he heard females talking and doors closing. This is not an exigent circumstance. I would put to the court that it is not enough. That first off, he ordered Madison to go upstairs and get her mother, so he was basically the cause of the females talking upstairs. They were upstairs for only 30 to 45 seconds, which is not a lot of time. And further, he only stepped three or four feet into the house at this point in time. If he was trying to prevent the destruction of narcotics upstairs, he would have quickly proceeded to that location to prevent that. But no, he stepped three or four feet into the house, and then just began looking around. That's because he wasn't entering on an exigent circumstance. That was a pretext. He was entering for the purpose of searching the house. Do you have any further questions? We ask that the court affirm the trial court's determination that the officers did not have probable cause to suppress the evidence. Thank you. Mr. Bassanico, rebuttal. Mr. Bassanico, what proof or what factor did they have, the police officers have, what source did they have to make them believe that these drugs were being destroyed or may be destroyed? The movement that Officer Woods heard throughout the house. There was an unexplained movement that the defendant said was just cats. We know that wasn't cats because we know there's another person later found in this house. In the basement. Well, that's where she came up eventually, but we don't know where she was in the interim. We have no idea. They willingly showed him around the house, correct? According to the officers, yes. And no credibility determination by the trial court was rendered on that. The defense counsel makes a big deal about how they did this search before they got the warrant. Well, that's not what was testified to by the officers. The defendant said that, and the officers said something completely different. I'm doing a protective sweep. I believe I'm in danger because I hear things in this house. We're waiting for a search warrant. We can't have the officers be in danger. The trial court made no credibility determination on that. But, you know, he's testifying basically, oh, somebody might be armed. Did they have any indication that there were weapons in this home? I mean, generally, the confidential informant would say, oh, yeah, it was in there, bought drugs, and, yeah, they had guns. Was there any indication to them that there were weapons in this home? I'm not sure if there was a direct reference to them being armed. We actually conceded in the accident circumstances argument that there was no indication that they would be armed. But that doesn't mean that they don't pose a danger to the officers. For what it's worth, if you look at the search inventory, shotgun shells were found in the residence. That's after the fact. There was no indication at all. No, no, and I'm conceding that point, Your Honor. I'm totally conceding it. But to the extent that guns are often associated with people who deal drugs, the inventory corroborates that, and officers are taught that, that people who deal drugs are often armed. So another thing absent from the defense counsel's presentation is the fact of all this other evidence about marijuana and marijuana shake being found in places other than the bedroom on the second floor. It was in this backpack that was on the first floor that the defendant denies even exists. How can that be testimony in a hearing and the trial court not render an opinion on that when she's hanging her hat on the fact that marijuana was found on the second? I think she just ignored it. I think she might have forgotten. I think she didn't. She came from the upstairs. We don't know. Do we know where the backpack was located, where she obtained it from before presenting it to the police? We have no idea because she says it didn't even exist. So it's not like she could say where she picked up a nonexistent object. But at the time of the search, it is on the first floor. And, Justice Shostak, I think you mentioned nothing in this complaint for a search warrant about what was found in that apartment is mentioned in the complaint for a search warrant. It's not as if they're piling on probable cause based on something they see. Officer Dratz removed himself from the situation to apply for the search warrant and only relied on the odor of cannabis and the tip. So this is not the situation that the defense counsel is presenting. There was no testimony, was there, that the odor of cat urine is similar to or can be confused with the odor of cannabis? There's actually the opposite testimony. Detective Fields says, I know cat urine. This was marijuana. I believe that's the testimony. So he basically extricated from the factual analysis that possibility. Right. But the important of that is the defendant and the other defense witness are acknowledging that there are pungent odors coming from this and trying to explain them away to the police officer. I ask that because I think I was told that there is a strain of marijuana that does smell like cat urine. To the extent that if that evidence had been presented here, I think we're golden. Yeah, well, that's not in the record. Right, right. But we'll save that in our back pocket for next time. The backpack was inventoried, right? It was. And the contents of it were also inventoried. And there were empty containers with marijuana residue in them. Empty containers that were sealed. I don't know if they were sealed or not. That's not in the record. But to the extent that the defendant presented the officers with the backpack, I would suggest that she's saying this backpack smells like what you're smelling. And she also said it's my boyfriend's, to the extent what that's worth. So we would ask Your Honor to reverse the decision in the trial court. Thank you. The court thanks both parties for their arguments today. The court will take the case under advisement. A written decision will be issued in due course. Thank you.